(No. 93-CC-0684–)

ETHA LEWIS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 14, 1999.*

JIMMIE L. JONES, for Claimant.

RODRIGUEZ & VILLALOBOS (RICHARD E. GIRARD, of counsel), for Respondent.

OPINION

RAUCCI, C.J.

The Claimant has filed a two-count complaint against the Board of Governors and State College and Universities for Governor's State University alleging a breach of contract and the tort of intentional infliction of emotion distress. She has alleged that the acts of employees of the State prevented her from completing her master's degree in school psychology at Governor's State University.

Ms. Lewis was born in 1927 and earned her high school degree in Montgomery, Alabama. She graduated from business college in 1948 and sixteen years later, in 1964, she graduated from Wilson Junior College in Chicago. In 1975, she earned a degree in special education from Chicago State and then began employment with the Chicago Board of Education as a special education specialist. In 1980, she went on to earn a master's degree in urban education at Governor's State University. She later enrolled in a doctoral program at Northern Illinois University, but subsequently withdrew from that program when she learned that the Board of Education and Governor's State University were offering a school psychology program to train individuals for the Chicago school system. In 1990, she enrolled in the school psychology program at Governor's State. Previously she was certified to teach in the areas of learning disabilities,

emotional disturbances, behavioral disorders and the educable but mentally handicapped. Candidates for the masters degree in the school of psychology were required to take courses 855, Intellectual Assessment; 857, Personality Assessment; and 858, Advanced Seminar. While not the only requirements for the degree, the Claimant's participation in these courses resulted in this claim.

The applicable catalogue for students in 1991-1992 describes Psychology 858 in pertinent part as follows: "Psych 858 Advanced Seminar in Individual Assessment, Prerequisite: Psych 845, 855, and 857."

In the winter trimester of 1991, Ms. Lewis registered to audit the Psychology 858 course. She did so because she had not yet completed the requirements of Psychology 857, the course on Personality Assessment which was one of the prerequisites for Psychology 858. She had taken course 857 from Dr. Lewandowski in the summer trimester of 1991, and course 855, the Intellectual Assessment course, in the fall trimester. Much of the testimony revolved around the Claimant's treatment by Dr. Graff in course 855. But it is clear that the Claimant's failure to have a completed grade in course 857 by January, 1992 was the primary reason she was not allowed to register for credit for Psychology 858.

The Personality Assessment course, taught by Dr. Lewandowski in the spring/summer trimester of 1991, required the graduate students to administer certain tests to a grammar school student in a Chicago Public School, score that test and then report the results in a written and verbal report to the professor. The initial case study report submitted by the Claimant was not acceptable to the professor and the Claimant was requested to submit another report. Because she had not done so by August of 1991, she received an incomplete instead of a grade. As a

remedial measure, Dr. Lewandowski suggested that the Claimant audit another professor's 857 class, and she was agreeable to do so. By the end of the fall semester, Claimant still had not submitted the work required by Dr. Lewandowski. At this stage, the incomplete would normally be changed to an "F" pursuant to university policy, but the Claimant made application for what is referred to as an extended incomplete, stating that she had experienced personal problems and stress which had prevented her from completing her responsibilities in Dr. Lewandowski's class. In December of 1991, the school granted her an extension of the incomplete which allowed her more time to complete her unfinished work in the Psychology 857 class. Claimant was to complete the work by the middle of March as indicated by the language on the extension request form. In the interim, Dr.Woodward, the Psychology Department chair, met with the Claimant and, in reviewing her next semester classes, made it clear to her that she would not be allowed to take the Psychology 858 Advanced Seminar in Individual Assessment until she had completed both the work in Doctors Graff and Lewandowski's classes. After checking with Dr. Graff, it became apparent that an acceptable grade in her class was imminent. Dr. Woodward testified that the fact that Claimant seemed far from complete in Dr. Lewandowski's class prevented her from taking the 858 class. She then asked if she could audit Psychology 858 in order to get a head start, and Dr. Woodward said that it would be acceptable to him if it were acceptable with the teacher in the class.

The effects of audit registration were known to Claimant, an educator for much of her adult life. Finally, in April of 1992, Dr. Lewandowski gave her a "C" for her work in his class the previous year. Claimant then attempted to change her status in the 858 Advanced Seminar from audit to a registered student and receive a grade.

The University's unwillingness to allow her to make that change resulted in this claim.

There is little disagreement about the status of the law in this area. While a university faculty is granted great leeway in its evaluation of students, it may not act maliciously or in bad faith by arbitrarily and capriciously refusing to award a degree to a student who fills the requirement for a degree. (*Tanner v. Board of Trustees* (1977), 48 Ill. App. 3d 680, 363 N.E.2d 208, 6 Ill. Dec. 679.) The Claimant's position is that Professor Woodward acted arbitrarily in preventing the Claimant from making the switch from audit status to registered student in the 858 Advanced Seminar, and suggests that it was customary for a student with an incomplete to go on to the next class. In supporting this position, the Claimant presented evidence that there were other students on the same academic course for the school psychology program who escaped the notice of Dr. Woodward and were able to be registered in 858 even though they had not yet received grades in the prerequisites which were laid out in the catalogue for students by Governor's State University in 1991-1992. The Claimant is correct. There were other students who did not do what they were supposed to do, who did not follow the catalogue and registered and took courses that they should not have been allowed to take for credit. The fact that certain individuals circumvented the rules of the University and were able to escape detection does not however, mean that Claimant should also be allowed to do so.

There exist factual conflicts between the testimony of Dr. Lewandowski and the Claimant as to why it took so long for the Claimant to receive a grade in his class. Claimant maintains that she did, in fact, hand in the required assignment and that Dr. Lewandowski either lost

it or failed to grade it in a timely fashion. This does not change the fact that, as late as December 17, 1991, Claimant was seeking additional time to complete her requirements in the 857 class, a class that was supposed to be completed in August of 1991.

Prerequisites are built into an educational program to insure an orderly progression in the development of skills of the students, so that the student is not taking classes for which he is not prepared. At Governor's State there were evidently a number of students who felt that the rules regarding prerequisites did not apply to them. At the time, unfortunately, Governor's State relied on the honor system when it came to prerequisites thereby vesting discretion in the students themselves as to their fitness to proceed to the next level. Dr. Woodward, in effect, admitted that the system employed by Governor's State during the relevant time period was ineffective and that there were students who were successful in evading the requirements laid down by the University. However, there were others, as Dr. Woodward testified, who were detected and removed from courses because of an incomplete grade in a prerequisite. Claimant was not the only student who was affected by Dr. Woodward's decisions to enforce the conditions of the catalogue regarding prerequisites. By simply enforcing the University requirements that she complete prerequisites for Psychology 858 before taking the class, the University certainly did not act in an arbitrary or capricious fashion.

The claim will be denied.

It is therefore ordered, adjudged and decreed that the Claimant's claim is dismissed and forever barred.